THE FIRST NATIONAL BANK OF CARTERSVILLE *v.* BAYLESS.

1. A gift by a debtor insolvent at the time is void as to his then existing creditors, whether made for the purpose of defrauding them or not; but a gift by such a debtor is not void as to a person who subsequently becomes his creditor, unless at the time of making the gift there was an actual intention on the part of the debtor to afterwards obtain credit from and defraud that person, and the gift was made in whole or in part for the purpose of accomplishing this result. Even if the money of the subsequent creditor was obtained by the debtor for the express purpose of paying debts existing when the gift was made, and was actually used for that purpose, these facts alone would not make the gift void as to this creditor, if the conduct of the debtor throughout the entire transaction was honest and he had no real intent to defraud.

2. A mortgage given by a wife upon her own property in settlement of a debt of her husband is not binding upon her, although she may have given the mortgage under the impression that the creditor holding this debt could for some reason subject the property in question to its payment, and intended by giving the mortgage to effect a compromise of what she regarded as a doubtful claim against the property.

3. The master having found that the debtor in this case neither intended nor practiced any actual fraud, and the exceptions to the master's report, even if sufficient to call in question the correctness of this finding as to the questions of fact therein involved, having been overruled by the trial judge, who thereby approved the report, and the evidence to warrant such approval being ample, this court has dealt with the case upon the assumption that the facts were as found and reported by the master.

August 16, 1895.

Equitable petition. Before Judge MILNER. Bartow superior court. July term, 1894.

NEEL & SWAIN and J. H. WIKLE, for plaintiff.
J. W. HARRIS, Jr., for defendant.

Simmons, Chief Justice.

Our code, §1952, declares that "every voluntary deed, or conveyance not for a valuable consideration, made by a debtor insolvent at the time of such conveyance," "shall be fraudulent in law against creditors, and as to them null and void." The only facts necessary to be shown, in order to render the conveyance fraudulent in law, are the indebtedness, the insolvency of the debtor, and that the conveyance was voluntary. When these facts are proved, the law conclusively presumes a fraudulent intent and declares the instrument void so far as creditors who held demands against the donor at the time of the conveyance are concerned. Such conveyances may also be void as against subsequent creditors, but as to them the law does not conclusively presume a fraudulent intent. Before the conveyance will be declared void against subsequent creditors, there must be proof of an actual intent to defraud in making the conveyance. There seems to be some conflict in the authorities on this subject, but upon examination of the cases it will be found that the conflict is more apparent than real. In determining whether there was an actual intent to defraud subsequent creditors or not, each case must depend upon its own facts and circumstances. It is difficult to prove the actual intent which is in the mind of a man at the time he makes such a conveyance, and it must be arrived at from a consideration of the facts and circumstances of the particular case. If it should be shown that a man made a voluntary gift of a large part or all of his property to his wife, and remained in possession and withheld the deed from record, and immediately or soon after the making of the gift embarked in some hazardous enterprise and created debts in connection therewith, this would indicate such an actual intent to defraud creditors as would authorize a jury to set aside the conveyance. On the other hand, if

a man who is engaged in business should make a voluntary conveyance to his wife, reserving property sufficient in his opinion to meet his existing indebtedness, and in the conduct of his business should borrow money and pay such indebtedness, and it should appear that he did this in good faith and without any intent to defraud the person from whom the money was borrowed, the conveyance ought not to be set aside. A man engaged in business might with the best of motives donate a portion of his property to his family, believing that he has reserved enough to carry on the business and pay his debts, and yet from some unforeseen cause become shortly thereafter insolvent. The financial crisis through which we have been passing furnishes many instances of this kind. Men deeming themselves amply solvent have made gifts of this character, and afterwards, by reason of a monetary panic and a consequent inability to collect their debts, have unexpectedly found themselves insolvent. Where a conveyance is made under such circumstances, and nothing is done to mislead subsequent creditors as to the fact of the conveyance, it would be highly unjust to set it aside at the instance of such creditors, even though their debts may have been created to pay indebtedness existing at the time of the conveyance. For a full discussion of this subject see: Wait on Fraudulent Conveyances, §96 *et seq.;* and an extended note by Mr. Freeman to Hagerman *v.* Buchanan, 14 Am. State Rep. 732, 745, 751 *et seq.,* in which numerous decisions are collated. See also *Horn v. Ross,* 20 *Ga.* 210, 65 Am Dec. 626; Fullington *v.* Northwestern etc. Association, 48 Minn. 490, s.c. 31 Am. State Rep. 663; Rudy *v.* Austin, 56 Ark. 85, s.c. 35 Am. State Rep. 85; Wallace *v.* Penfield, 106 U. S. Rep. 260; Carr *v.* Breese, 81 N. Y. 584.

It appears in the present case, that in March, 1889, Bayless, as merchant, made a voluntary conveyance to

his wife, of a vacant lot of land in the town in which they lived, and in June thereafter the deed was recorded. During the same year he erected a dwelling-house on the lot as home for his wife and family, taking from his business the money to pay for the building. In May, 1891, he contracted the debt sought to be enforced in this action. The bank claims that the conveyance to his wife was fraudulent as to it, because, as it alleges, some or all of the money which it lent to Bayless went to pay off debts existing at the time the conveyance was made and the house built. The court referred the case to a master, who, after hearing the evidence submitted on both sides, reported that at the time the conveyance was made, Bayless was entirely solvent, and that when the building was completed he had assets sufficient if properly managed to have paid all his debts. The master also found that Bayless was not guilty of any actual or intentional fraud, but acted in good faith. Exceptions were filed to this report, and were overruled by the trial judge.

We have carefully considered the master's report and the evidence submitted by him, and we think his findings of fact are sustained throughout by the evidence; and these findings being approved by the trial judge, we deal with the case upon the assumption that the facts were as found and reported by the master. Under these facts the title of the wife was good as against the bank, and the lot was not subject to her husband's debt to the bank. If when he made the conveyance he had an intention to borrow money and pay off his existing indebtedness, knowing that he was in embarrassed or failing circumstances and probably would not be able to repay the money thus borrowed, and intending by this scheme to save the house and lot to his wife, the conveyance would have been fraudulent, and the bank would have been subrogated to the rights of the pre-

existing creditors whose debts were paid with the money borrowed from the bank.    Wait on Fraudulent Conveyances, §103; Bump, Fraud. Con. 322–3; Savage *v.* Murphy, 34 N. Y. 508; Rudy *v.* Austin, 56 Ark. 73, s. c. 35 Am. State Rep. 86.

After the failure of Bayless, the bank, by making to Bayless and his wife the same claim which it makes in this litigation, that is, that the house and lot were subject to its debt, induced the wife to execute to it a mortgage on the property to secure the husband's indebtedness.    If what we have said is true as to the property not being subject to the debt of the husband to the bank, the mortgage was not binding upon the wife, although she may have given it under the impression that the bank could subject the property; our code (§1783) expressly providing that a wife cannot bind her separate estate by any contract of suretyship nor by any assumption of the debts of her husband, and that any sale of her separate estate made to a creditor of her husband in extinguishment of his debts shall be absolutely void.

*Judgment affirmed.*