## 23281. BAXTER *v.* BANK OF GRANTVILLE.

DECIDED FEBRUARY 5, 1934.

*Atkinson & Allen, W. Y. Atkinson,* for plaintiff in error.
*Hall & Jones,* contra.

JENKINS, P. J. ■ "There is no matter of public policy more firmly fixed in this State than that which outlaws a contract of suretyship on the part of a wife in behalf of her husband, or the payment by the wife of any debt of her husband from the proceeds of her separate estate." "A wife may recover her money which has been paid to a creditor of her husband in extinguishing his debt, even in a cash sale, with her funds, . . and where a wife executes a deed conveying her real estate to a creditor of her husband, she may, upon proof of the fact, proceed to rescind and annul the contract successfully and reassert her former ownership against the grantee or even against holders under the grantee with notice of defect in the consideration . . or by proceeding for a cancellation of the deed of conveyance." *Ulman* v. *McGill,* 155 *Ga.* 555, 556 (117 S. E. 657); *Sally* v. *Bank of Union,* 150 *Ga.* 281 (3) (103 S. E. 460); Constitution, art. 3, sec. 11, par. 1; Civil Code (1910), §§ 2993, 3007, 6456. This is true although technically the inhibited acts of the wife, declared "absolutely void" by the statute, are not in the strict sense of the word illegal, but are voidable at her election as against the original payee, and are merely unenforceable except as against bona fide purchasers for value without notice; and although the contractual powers of the wife with respect to her husband, except as provided in the code sections

cited and in section 3009, remain otherwise unimpaired. *Jones* v. *Harrell,* 110 *Ga.* 373, 377 (35 S. E. 690) ; *Perkins* v. *Rowland,* 69 *Ga.* 661, 664; *Howard* v. *Simkins,* 70 *Ga.* 322; *Braswell* v. *Federal Land Bank,* 165 *Ga.* 123 (3, 4) (139 S. E. 861); *Athens Mutual Ins. Co.* v. *Toney,* 1 *Ga. App.* 492, 497 (57 S. E. 1013) ; *Farmers & Traders Bank* v. *Eubanks,* 2 *Ga. App.* 839, 841 (59 S. E. 193). Although the right to plead her disabilities of coverture is personal to her or her privies, and is a privilege somewhat analogous to the right to plead infancy or usury, yet the public policy of the State preserves to her the right, as to the immediate creditor and his assigns with notice, to annul or defeat a prohibited suretyship or debt and to recover its lost fruits, even after the close of the immediate transaction or litigation involving the same, unless there has been a judgment against her. *Parrott* v. *Smith,* 135 *Ga.* 329 (3) (69 S. E. 552) ; *Ulman* v. *McGill,* supra; *Taylor* v. *Allen,* 112 *Ga.* 330 (37 S. E. 408) ; *Bond* v. *Sullivan,* 133 *Ga.* 160 (65 S. E. 376, 134 Am. St. R. 199) ; *Stewart* v. *Ellis,* 130 *Ga.* 685 (4), 688 (61 S. E. 597) ; *Glover* v. *Moore,* 60 *Ga.* 189, 191, 192; *Lewis* v. *Gunn,* 63 *Ga.* 542, 546; *Wingfield* v. *Rhea,* 73 *Ga.* 477.

"A note purporting to be that of a married woman, but given in discharge of a pre-existing debt of her husband, renders her a surety within the purview of the statute prohibiting a married woman from entering into a contract of suretyship for her husband." "When the wife executes her note to take up the debt of her husband, or borrows from the creditor of the husband on her own obligation the money, and hands it to him to pay her husband's debt, she is, in the meaning of the statute, assuming the debt of another, the same as if her name was signed as surety to a writing promising to pay the debt. The form of the transaction will not be allowed to defeat the statute, when the substance is an evident attempt to evade it." *Bank of Eufaula* v. *Johnson,* 146 *Ga.* 791, 793 (92 S. E. 631) ; *Rountree* v. *Rentfroe,* 139 *Ga.* 290, 293 (77 S. E. 23) ; *National Bank of Athens* v. *Carlton,* 96 *Ga.* 469 (23 S. E. 388) ; *Blackburn* v. *Lee,* 137 *Ga.* 265, 266 (73 S. E. 1). "A wife has the right to repudiate a colorable scheme or device by which she was induced by the creditor and her husband to assume the previous debt of her husband to such creditor without any consideration flowing to her, no matter how the true inwardness of such illegal and void transaction has been concealed." *Jackson* v.

*Reeves,* 156 *Ga.* 802 (3) (120 S. E. 541); *Simmons* v. *International Harvester Co.,* 22 *Ga. App.* 358 (4) (96 S. E. 9). Where an instrument made by a married woman "is void by reason of being in violation of the special provisions of the law on that subject, it can not be vitalized by any subsequent conduct on her part. She is as much disabled from rendering it valid after she makes it as she is from making it in the first instance." *Carllon* v. *Moultrie Banking Co.,* 170 *Ga.* 185 (2), 198 (152 S. E. 215); *Klink* v. *Boland,* 72 *Ga.* 485, 493.

■ "The settlement of doubtful issues involved in a pending cause is a sufficient consideration to support an agreement of settlement and compromise." *Boswell* v. *Gillen,* 131 *Ga.* 310 (4) (62 S. E. 187). While it is true, under our decisions, that "in determining the validity of an agreement in accord and satisfaction of a disputed claim, it is not the merit, but the bona fides of the . . contention which is the controlling factor" (*Riley* v. *London Guaranty Co.,* 27 *Ga. App.* 686, 109 S. E. 676), "where the contention [is] made in good faith and . . honestly believed in" (*Armour Fertilizer Works* v. *Wynne Mercantile Co.,* 40 *Ga. App.* 842, 151 S. E. 671); that "the compromise of a contention as to property rights, the final outcome of which, if settled by litigation, the parties consider to be doubtful, furnishes a consideration sufficient to support the compromise contract," and "it is not essential that the matter should be really in doubt" (*Belt* v. *Lazenby,* 126 *Ga.* 767 (2), 772, 56 S. E. 81); that the maker of a note will be held bound where it is given in settlement of a pending suit, without regard to "whether the suit itself was instituted upon a just and valid claim or not" (*Glenn* v. *Zenovitch,* 128 *Ga.* 596 (3), 58 S. E. 26); and even that "where a disputed claim, depending upon a legal question, is settled and adjusted by the parties, and a contract between them is accordingly made whereby one promises to pay to the other a sum of money, the promisor is bound thereby, though such question be really free from doubt, and properly resolved would have absolved him from liability" (*City Electric Ry. Co.* v. *Floyd County,* 115 *Ga.* 655, 657, 42 S. E. 45), yet these general principles are to be applied together with other equally established rules, that " a contract executed in consideration of a previous illegal one or in compromise of differences growing out of it, is like that whereon it rests, illegal and incapable of being enforced."

that "courts sustain such a defense, not for the sake of the defend-, ant, but upon general principles of public policy" (*Tompkins* v. *Compton*, 93 *Ga.* 520 (2), 525, 21 S. E. 79); and this rule has been held applicable even to settlements of usury disputes, and "if there be a dispute, bona fide, as to whether or not any particular contract is tainted with usury, the parties may, by accord and satisfaction, settle that dispute; but . . it must appear that there was a bona fide dispute—uncertainty, doubt as to the existence of the usury, that the parties must have had that doubt, dispute, distinctly in view in the settlement, and that resolution of the doubt must be a point of the settlement" (*Parker* v. *Fulton Loan &c. Asso.*, 46 *Ga.* 166 (4), 197; *Tyson* v. *Woodruff*, 108 *Ga.* 368, 372, 373, 33 S. E. 981). Even in the case of a family settlement, which equity highly favors, "to furnish a sufficient consideration for such settlement, *the right of the party asserting such settlement must not be wholly without foundation,*" and there must be "some right or show of right relinquished by the party seeking to enforce the agreement of settlement; and *if no right whatever exists, there can be no such consideration as will support the settlement*" (italics ours). *Jones* v. *Robinson*, 172 *Ga.* 746, 757, 758 (158 S. E. 752). This rule, by the great weight of authority, applies to all compromises and settlements, so "a person asserting a claim without any ground whatever on which to base it can not be said to have acted in good faith." "The compromise of an illegal claim out of which no cause of action can arise in favor of the person asserting it is not sufficient consideration to support the compromise agreement" (12 C. J. 327, 328, 332, 334); and "an accord and satisfaction entered into and executed through mutual mistake of fact is not binding and may be rescinded," and "either party is entitled to rescind in case of a mutual mistake of law as to their respective rights" (1 C. J. 570), so that, in the case of a married woman, it has been held in this State that a mortgage "given by [her] upon her own property in settlement of a debt of her husband is not binding upon her, although she may have given the mortgage *under the impression that the creditor holding this debt could for some reason subject the property in question to its payment, and intended by giving the mortgage to effect a compromise of what she regarded as a doubtful claim against her property.*" (Italics ours.) *First National Bank of Cartersville* v. *Bayless*, 96 *Ga.* 684 (2), 688 (23 S. E. 851).

■ The promissory note upon which the plaintiff bank recovered a judgment in this case is based upon a renewal of the balance due on a $5000 note given by the defendant, a married woman, in settlement or compromise of previous suits which were brought by the bank upon two notes previously executed by her. All of these notes, under the undisputed evidence, represented renewals or assumptions of liability and a settlement by the wife growing entirely out of several notes for a larger indebtedness, signed by a corporation and her husband. The wife received no money or consideration from any of these notes, but all were for the benefit of the bank and the corporation, and in assumption or settlement of obligations on which her husband was liable to the bank. In the written agreement of compromise or settlement of the previous suits, it was recited that, "whereas suit has been filed upon said notes by the bank, . . which suit is now pending, and whereas there is a controversy as to the liability of the said [wife] upon said notes, now, therefore, in consideration of the settlement of said suits and the said controversy, and in consideration of the relinquishment by the bank . . of all liabilities upon said notes upon the part of [the wife] except to the extent of $5000," a note for that amount would be executed by the wife, which she would secure by executing to the bank a deed to her home place and an assignment of her equity in certain corporate stock. As all of the transactions were with the bank as creditor of the husband since the inception of the original indebtedness, and it could not claim the status of an innocent third person, it is bound by full knowledge that the defendant signed the original notes, upon which the previous suits were brought, merely as surety for her husband or to assume part of his indebtedness, for which she herself was not liable. The giving by the wife of the $5000 note in compromise or settlement of the suits was based on nothing more than the relinquishment by the bank of part of its unenforceable claim. The only real controversy which existed was whether the bank could succeed in collecting a debt which is declared by the public policy of the State to be voidable and unenforceable at the option of the wife, and upon which her rights would not be barred except after a final judgment. No such judgment having been entered against her, the alleged claim and controversy, being without legal foundation and baseless, furnished no valid consideration for her obligation. This amounted to noth-

ing more than a final renewal or assumption of part of the original prohibited obligation, which, as held in the *Carlton* and *Klink* cases, supra, could not be "vitalized by any subsequent conduct on her part," and she was "as much disabled from rendering it valid after she [made] it as she [was] from making it in the first instance." There being no doubtful issue and no real controversy between the parties to the compromise, and therefore no valid consideration, there was no legal settlement binding upon the wife, and her right to resist the enforcement of the voidable debt remained unaffected. Nor can such a settlement be sustained upon the theory that both parties may have bona fide thought that there was a doubtful issue and a controversy upon which the bank might have prevailed. Without regard to any question or proof of fraud, which the defendant charges against the bank, in misleading her through the agency of her husband, in order to have acted bona fide it must have been actuated by a mistake of law in filing its suits, if it erroneously but in good faith believed that she, as a married woman, was and could be legally held liable upon her voidable and unenforceable obligation. If the bank was not moved by such a mistake of law, its actions could be taken only as a scheme and device for the purpose either of obtaining a judgment to which it was not legally entitled, and against which she would not be able afterwards to assert her disability of coverture, or else to press or inveigle her into compromising or settling the suits—irrespective of any actual fraud on the part of the bank—under the mistake of law on her part that she was or could be held legally liable. In the latter event, the bank could not assert its good faith in believing in its claim; and in the remaining alternative that the bank bona fide believed that it had a legal right to sue and recover, there was a mistake of law by both parties, a fictional and not a real "controversy," which furnished no valid consideration, and on account of which, under the ruling in the *Bayless* case, supra, and other authority cited, the wife can not be held bound.

■ There is nothing in the decision in *Thornton* v. *Lemon*, supra, on which the bank strongly relies, and upon an erroneous interpretation of which the settlement note may possibly have been taken and given, to conflict with the rulings here made. There it was held: "A promissory note executed and delivered by a married woman for the purpose of settling a pending action against her hus-

band and herself, wherein the plaintiff alleged that both were liable, is binding upon her although in point of fact the debt declared upon was exclusively that of the husband. The consideration of such a note is not the husband's debt, but the settlement of the litigation. . . There being, on the trial in the magistrate's court, sufficient evidence to support the plaintiff's contention that the notes sued upon were given in settlement of litigation of the nature above indicated, there was no abuse of discretion in over-ruling the defendant's certiorari." An examination of the original record in connection with paragraph 2 of the decision shows not only that the parties to the settled suit bona fide believed that there was a real controversy, but there was in fact such a controversy. A wife was sued with her husband upon an alleged joint account. In defending the suit upon her note given in settlement, she swore that the account was solely against her husband, and introduced evidence to support her contention. But this evidence was contro-verted by the plaintiff creditor, whose testimony showed that the account was *in fact* a joint one, charged to both the wife and the husband, and that the wife had herself purchased a large part of the goods. On such a joint obligation she might be liable. "A husband and wife may legally enter into a joint contract or under-taking the consideration of which passes to them jointly, and in that event the wife will be bound." *Braswell* v. *Federal Land Bank,* 165 *Ga.* 123 (4) (139 S. E. 861), and cit. The original suit not being without foundation, but being based upon an enforceable claim with supporting evidence, the wife's note was founded upon a valid consideration, which, as was held in the *Thornton* case, was "not the husband's debt, but the settlement of the litigation." On the other hand, in the instant case, there was no such valid claim, that the wife had entered into a joint under-taking or had made any contract on which she could be held legally liable. Her obligation was and remained purely one of suretyship or assumption of the debts of a corporation and of her husband, who signed the original notes, from which she received no part of the consideration. Because of her disability, the bank had no legal right of recovery against her; and since whatever it may have thought or she may have thought (being a mistake of law) would not make the controversy a real rather than a merely fictional one, and since such a mistake upon her part would in no event, in the ab-

sence of a judgment, preclude her rights, the settlement of such a litigation, without any judgment, afforded no valid consideration for the palpably illegal and unenforceable note upon which the present suit is brought.

For all the reasons stated, it is our opinion that the plaintiff was not entitled to recover, and that the general grounds of the defendant's motion for a new trial should have been sustained. Athough our previous decision, reversing the judgment on a former trial directing a verdict for the plaintiff, was planted upon another ground, relating to the conflicting evidence on the defense that the bank was a party to or had notice of any actual fraud practiced by the husband on the wife in persuading her to sign the settlement agreement and note in question, yet it withheld any determination of the question upon which the case is now decided. *Baxter* v. *Bank of Granlville,* 45 *Ga. App.* 824 (166 S. E. 63). Under the rulings here made, it is unnecessary to determine whether the evidence as to the alleged actual fraud and notice of the bank demanded a finding in favor of the wife; or whether the court erred in giving or refusing instructions as to which exception is taken in the special grounds. If on a retrial the evidence as to the nature of the obligations, and the previous litigation and compromise, and as to the payments made by the wife which she seeks to recover back from the bank, should be substantially the same, a verdict upon the pleas of the defendant would be demanded, regardless of any question of actual fraud or notice thereof by the bank. The questions presented as to charges upon that issue, and as to other instructions, are not such as would be likely to recur in a new trial.

*Judgment reversed. Stephens and Sutton, JJ., concur.*